**STATE of Iowa, Appellee,**

v.

**Denny Joe PROPP, Appellant.**

No. 94–278.

Supreme Court of Iowa.

May 24, 1995.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., Diann Wilder-Tomlinson, County Atty., and Peter J. Grady, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

NEUMAN, Justice.

This is an appeal by defendant Denny Joe Propp from the judgment and sentence en-

tered upon his conviction for the crime of lascivious acts with a child in violation of Iowa Code section 709.8(3) (1993). Propp was charged with the statute's "solicitation" alternative. On appeal, Propp claims that the record lacks sufficient proof that he solicited a child to engage in a sex act. We affirm.

The State filed a two-count trial information charging Propp with lascivious acts with a child and indecent contact with a child. *See* Iowa Code §§ 709.8(3), 709.12. The charges stemmed from two separate incidents, with two separate victims, occurring within one day of each other. Propp, then age twenty-seven, waived the right to be tried by a jury. In his trial before the court, the following facts emerged.

A thirteen-year-old girl, L.C., first encountered Propp at a laundromat in Marshalltown, Iowa. L.C., who was with her mother at the time, noticed Propp staring at her. The next day, while L.C. was watching football practice, she again saw Propp. This time he approached her. L.C. told him to stay away, and he complied. Later that same day, L.C. returned to the school yard on her bicycle. Again, Propp was there, this time talking with several young boys, among them D.R. and Charles. L.C. testified that she overheard Propp asking the boys to offer her twenty dollars to "f--- him." She said D.R. then relayed Propp's message to her. L.C. immediately went home and told her parents about the incident.

D.R., nine years old, confirmed that he was with Propp and some younger kids at the school where L.C. was riding her bike. He reported hearing Propp say to L.C., "I will give you $20 if you will lay me." D.R. stated that it was Charles, not he, who told L.C. what Propp had said. Charles, eight years old, testified that he heard Propp say that he liked L.C. and wanted to know her name. But he denied hearing Propp say anything else to her or about her. Charles admitted on cross-examination, however, that he had discussed his proposed testimony with Propp and his family prior to trial.

Police officer Kirk Brooks interviewed Propp in connection with the incident. He testified that Propp denied asking anyone to offer L.C. money in exchange for sex. Propp did, however, admit asking the boys to find out her name and age. Officer Brooks also observed that Propp seemed a bit mentally "slow" even though he claimed to be a high school graduate.

A final witness—L.C.'s nine-year-old sister, Alicia—testified that on the day following the incidents with L.C., Propp followed her to the family home and rode his bike around the house until her mother yelled at him to leave. The record also contained testimony that Propp had made sexually suggestive comments to D.R. and a younger child on the day of the incident involving L.C. The State proved that Propp took D.R. behind a tree and sexually fondled him the following day.[1]

Over Propp's objection, the court permitted the State to introduce Propp's 1986 conviction of lascivious acts involving an eleven-year-old child. Based on the facts described, the court found Propp guilty of violating section 709.8(3).

 I. Our review on appeal from a criminal conviction is the same whether a court or jury is the fact finder. *State v. LaPointe,* 418 N.W.2d 49, 52 (Iowa 1988). Our task is to examine all evidence in the light most favorable to the State, without regard to contradiction or inconsistencies, and assisted by all reasonable inferences. *State v. Robinson,* 288 N.W.2d 337, 338 (Iowa 1980). If the verdict is supported by substantial evidence in the record, it must be upheld. *Id.* Substantial evidence is evidence that could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *LaPointe,* 418 N.W.2d at 51.

II. On appeal, Propp contends the evidence fails to establish that he made a serious attempt to solicit L.C. to engage in a sex act. He claims that whatever comments L.C. may have heard were no more than idle

---

1. Propp was convicted of the indecent contact charge based on this incident. No appeal from this conviction has been taken.

chatter or made in jest. The State counters that the evidence, taken as a whole, leaves no doubt concerning Propp's intent to engage a child in a criminal act.

To sustain a conviction under Iowa Code section 709.8(3), the State was required to establish the following essential elements of the crime beyond a reasonable doubt:

1. The defendant, with or without L.C.'s consent, solicited her to engage in a sex act.

2. The defendant intended to arouse or satisfy either his own sexual desires or the sexual desires of the victim.

3. The defendant was then eighteen years of age or older.

4. The victim was then under the age of fourteen.

5. The defendant and the victim were not then married to each other.

Iowa Criminal Jury Instruction No. 900.4. Propp challenges only the sufficiency of the proof tendered on the first element.

Iowa Code chapter 709 does not define the term "solicit." Thus the trial court turned to the general, criminal definition of solicitation found in Iowa Code Chapter 705, Solicitation. Section 705.1 reads, in relevant part:

Any person who commands, entreats, or otherwise attempts to persuade another to commit a particular felony or aggravated misdemeanor, with the intent that such act be done and under circumstances which corroborates that intent by clear and convincing evidence, solicits such other to commit that felony or aggravated misdemeanor.

The parties concede that the trial court properly incorporated this definition into section 709.8(3). *See Hajek v. Iowa State Bd. of Parole*, 414 N.W.2d 122, 124 (Iowa 1987) (appellate courts reluctant to ascribe different meanings to same term, even when it appears in different statutes). Moreover, the definition contained in section 705.1 mirrors the generally accepted meaning of the term. The dictionary defines solicit as "to make petition to; entreat, importune ... to approach with a request or plea; ... to move to action; to strongly urge; to entice or lead

astray." Webster's Third International Dictionary 2168 (1965).

III. Propp urges us to focus on whether he actually intended a solicitation to occur. Failure to do so, he argues, creates the possibility of conviction on "evidence of a boastful or frivolous remark that does not deserve to be taken seriously." *See* John L. Yeager & Ronald L. Carlson, *Iowa Practice: Criminal Law & Procedure* § 102, at 33 (Supp.1994). Without proof of circumstances corroborating his intent, Propp claims, sufficient proof of guilt is lacking and the trial court erred in convicting him. *Id.*

In support of his claim that proof of criminal intent is missing, Propp points to evidence in the record that (1) he never personally approached L.C. at the time of the alleged solicitation, and (2) he never personally displayed money to her. Further, he claims that any message conveyed through the boys is more indicative of his immaturity and his desire to appear "manly" than any serious intent to solicit a sex act.

Like the district court, we are unpersuaded by Propp's argument. We think it fails to properly consider the legal as well as factual implications of the evidence admitted at trial.

We have long held that solicitation may occur on one's own behalf, or on behalf of someone else. *State v. Willis*, 218 N.W.2d 921, 924 (Iowa 1974). Thus the fact that Propp sent his message to L.C. through young boys does not preclude a finding that he intended the solicitation. Moreover, the ultimate success or failure of the solicitation is irrelevant to the validity of the conviction. The "[solicitation] is committed when the inducement is attempted...." *State v. Williams*, 315 N.W.2d 45, 50 (Iowa 1982). While evidence that Propp displayed money may have strengthened the State's case, lack of such proof does not compel acquittal as a matter of law.

The sincerity of Propp's solicitation is likewise supported by substantial evidence in the record. On his own initiative, Propp had encountered L.C. three times in less than two days. A reasonable fact finder could conclude that these contacts were more than just coincidental or casual. Both L.C. and

D.R. heard Propp offer money in exchange for sex. D.R. testified that Propp engaged another young boy in the solicitation. Propp, while denying the solicitation, conceded that he had inquired from the children about L.C.'s name and age.

Three other pieces of evidence bear directly on proof of Propp's intent. First, there is the evidence of contemporaneous and inappropriate sexual comment directed by Propp towards the children. ("How big is your mom's privates?" "I am going to pull down your pants.") Second, the record contains proof of Propp's indecent contact with nine-year-old D.R. on the day following his contact with L.C. Finally, criminal intent may be inferred from proof of Propp's previous conviction for lascivious acts with a child. *See State v. Casady*, 491 N.W.2d 782, 786–87 (Iowa 1992) (intent to commit sexual assault may be inferred from defendant's behavior, history of other criminal behavior, and attendant circumstances).

Taken together, this proof amply supports the court's finding that Propp committed the crime of lascivious acts by soliciting a child to engage in a sex act. We therefore affirm the judgment and sentence of the district court.

**AFFIRMED.**